UNITED STATES of America,
Plaintiff-Appellant,

v.

Bobby Wayne GILLILAND,
Defendant-Appellee.

No. 85–3874.

United States Court of Appeals,
Eleventh Circuit.

Jan. 13, 1987.

Richard Alan Poole, Asst. U.S. Atty., Jacksonville, Fla., Rangeley Wallace, U.S. Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellant.

Michael L. Edwards, Jacksonville, Fla., for defendant-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

■ The Government appeals from the district court's pretrial ruling in a prosecution for firearms violations, in which the court suppressed the grand jury testimony of the defendant, Bobby Wayne Gilliland. *See* 18 U.S.C. § 3731 (1982) (allowing United States to appeal district court's order suppressing evidence). The district court found that when Gilliland appeared before the grand jury, he thought that he had been given immunity. Although Gilliland's belief was erroneous, the court nonetheless suppressed the testimony, concluding that Gilliland's mistaken belief rendered it involuntary. The district court based its decision solely on the transcript of the grand jury proceedings; thus, we accord no deference to the court's findings of fact. We conclude that the district court erred, and

reverse and remand this case for further proceedings.

The parties do not dispute the facts relevant to this stage of the proceedings. A police officer, who was a personal friend of Gilliland's, visited Gilliland at his jewelry store. While there, the police officer saw several boxes of .357 magnum guns. Subsequent investigation led law enforcement officials to conclude that the guns were stolen property, and they questioned Gilliland. The Government then subpoenaed Gilliland to testify before a grand jury concerning any knowledge he might have about the theft of the guns.

When Gilliland appeared before the grand jury, the prosecutor warned him that he was a target of the grand jury's investigation, and that he had a fifth amendment right not to respond to a question if the answer might incriminate him. Briefly stated, the following sequence of events took place shortly after Gilliland had been sworn as a witness and had testified briefly about his background: (1) the prosecutor asked Gilliland if he knew Bobby Harris (whom Gilliland knew to be another target of the grand jury's investigation); (2) Gilliland asked the prosecutor whether he had immunity and was told that he did not; (3) Gilliland invoked the fifth amendment, but then chose to answer the prosecutor's question; (4) Gilliland again asked about immunity; again the prosecutor told him that the Government had not granted him immunity; (5) Gilliland thereupon invoked his right to silence, but then agreed to answer further questions.[1] Gilliland invoked his fifth amendment right to silence four more times. On one occasion he asked the prosecutor to refer a question to his lawyer.

■■■ The district court concluded that Gilliland's testimony was involuntary because he believed that he was testifying under a grant of immunity. Examining Gilliland's statements under the "totality of the circumstances," *see United States v. Washington*, 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977), we hold that even if Gilliland actually believed that the prosecution had granted him immunity, such a belief was unreasonable.[2] Gilliland twice asked the prosecutor whether he was immune from prosecution, and both times

---

1. The district court based its conclusion that Gilliland's grand jury testimony was involuntary on the following colloquy between the prosecutor and Gilliland:

   Q Do you know Bobby Harris?
   A Could I ask something? Do I have immunity in any questions I answer about these guns?
   Q Sir, at any time you can ask to talk to your attorney or if at any time you believe an answer to a question would incriminate you, you may refuse to answer on those grounds.
   A I understand that. Do I have immunity [sic] anything I know about these guns?
   Q No, sir, that's not my understanding.
   A Okay, sir. Then I don't want to answer any questions. I'll take what you say the Seventh or whatever it is, the Fifth. In other words, I don't want to answer any questions.
   Q I asked you the question if you knew Bobby Harris.
   A Yes, sir.
   Q And you are not going to answer that question?
   A Yes, sir, I know Bobby Harris.
   Q All right. Should I continue to ask questions and you can selectively decide whether you want to answer them?
   A No, sir, I [sic] rather not answer because I haven't stole [sic] anything, never have in my life.
   Q So, you're saying you're refusing to answer any further questions of the Grand Jury?
   A Well, I thought the paper said anybody knew anything up through today, answer anything had immunity from the state and federal [sic].
   Q Well, sir, I'm telling you that I'm not guaranteeing you immunity for anything that you tell this Grand Jury.
   A Well, then I'd rather not answer.
   Q All right.
   [Prosecutor] Well, with that, I would ask that Mr. Gilliland—
   Q I'm sorry?
   A I'm sorry.
   Q You want to make a statement, that's all right.
   A I don't mind—I know Bobby Harris, yes, sir. Let's just take it a question at a time. I want to be honest and fair about the whole thing. Okay. I haven't stole [sic] anything.

2. In his motion to suppress his grand jury statements, Gilliland did not claim that he had testified under the belief that his statements could not be used against him. The trial court, nevertheless, suppressed his testimony on that basis.

the prosecutor responded that he was not. Furthermore, Gilliland fails to explain why he invoked the fifth amendment four times *following* the colloquy with the prosecutor that allegedly led him to believe that he was testifying under a grant of immunity. Finally, we find the prosecutor's comment that it was "all right" for Gilliland to "make a statement" simply too weak a keystone to support his argument that he had a reasonable, subjective belief that he had been granted immunity.[3]

The district court chose not to rule on Gilliland's claim that his grand jury testimony was involuntary because the prosecutor continued to question him after he had invoked his fifth amendment right. Although we question whether Gilliland's claim has any merit, *see Washington*, 431 U.S. at 188, 97 S.Ct. at 1819 (test of compulsion is whether "the free will of the witness was overborne"); *United States v. Mandujano*, 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976) (prosecutor may pursue "[o]ther lines of inquiry" after witness asserts fifth amendment right to silence), we need not decide that issue at this time.

REVERSED and REMANDED.

---

3. In the absence of at least a showing of actual subjective belief, we doubt that the mere existence of conditions that would make it reasonable for a witness to believe that he had received immunity is a sufficient reason to suppress his testimony. We need not decide what showing is necessary, however, because, as a legal matter, any such belief in this case would have been unreasonable.